UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Nicolas and Jill Bosonetto

    v.                                    Civil No. 12-cv-277-JL
                                                Opinion No. 2013 DNH 080
Town of Richmond *et al.*

**MEMORANDUM ORDER**

    Procedural doctrines such as res judicata can be a source of
great frustration to litigants, who sometimes view them as
elevations of form over substance.  But many of those doctrines
have long occupied an important place in the law--in the case of
res judicata, to ensure that "at some point litigation over the
particular controversy come to an end." Colebrook Water Co. v.
Comm'r of Dep't of Pub. Works & Highways, 114 N.H. 392, 395
(1974).  Here, the controversy is between the plaintiffs, Nicolas
and Jill Bosonetto, and certain boards and officials of the Town
of Richmond, over their refusal to grant a building permit.

    The Bosonettos, proceeding pro se in this court, have sued
the Town, one of its former selectmen, and a former member of its
Zoning Board of Adjustment ("ZBA"), claiming that this refusal
violated a number of the Bossonettos' rights under the United
States Constitution.  The problem is that Mr. Bosonetto already
brought an action challenging the ZBA's decision in Cheshire

County Superior Court, which dismissed one of his claims and granted summary judgment for the Town on the others.  He then appealed the Superior Court's decision to the New Hampshire Supreme Court, which affirmed.  Bosonetto v. Town of Richmond, 163 N.H. 736, 740 (2012).

Based on these prior adjudications of Mr. Bosonetto's dispute with the Town its ZBA, the claims the Bosonettos have brought in this action are barred by the doctrine of res judicata, as the defendants argue in their motion for judgment on the pleadings.  See Fed. R. Civ. P. 12(c).  After hearing oral argument, the court grants that motion and directs the entry of judgment against the Bosonettos, as more fully explained below.

## I.   **Applicable legal standard**

Res judicata is an affirmative defense.  See Fed. R. Civ. P. 8(c)(1).  To grant a motion for judgment on the pleadings based on an affirmative defense, "the facts establishing that defense must:  (1) be definitively ascertainable for the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude."  Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008).  In ruling on such a motion, the court may consider not only the complaint itself, but also "documents incorporated by reference

into the complaint, matters of public record, and facts susceptible to judicial notice." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (quotation marks omitted).  This includes "documents from prior state court adjudications." Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (quotation marks omitted).

## II.  **Background**

The Bosonettos allege that, in May 2009, they "applied for a building permit to replace and relocate one of the single family dwellings (a mobile home) on their property," a 40-acre parcel in the Town that hosts four separate residences.  The Bosonettos, who have seven children, live in one residence, rent out the others, and "further use their property as a homestead by raising livestock, fruits, and vegetables."  The Bosonettos allege that the Town's Board of Selectmen, including defendant Sean McElhiney, denied their application for a building permit, "citing that the Town has no policy for allowing building permits on private roads."  See N.H. Rev. Stat. Ann. § 674:41, I(e) (preventing issuance of building permits for lots accessed only by private road unless, inter alia, "[t]he local governing body . . . has voted to authorize the issuance of building permits for the erection of buildings on said private road").

The Bosonettos appealed this decision to the Town's ZBA.  By
this point, the Bosonettos allege, the members of the ZBA had
been named as defendants in a lawsuit by the Saint Benedict
Center, where the Bosonettos attend church services and are
"involved in fund raising and activities."  Thus, the Bosonettos
say, the regular ZBA members "had to recuse themselves" from
hearing the Bosonettos' appeal, so the selectmen chose five new
ZBA members to do so, including defendant Sandra Gillis.  This
reconstituted ZBA denied the Bosonettos' appeal on the stated
ground, they allege, that they "had no rights to obtain building
permits on a private road."[1]

In September 2010, Mr. Bosonetto, acting through counsel,
commenced an action against the Town of Richmond and its ZBA in
Cheshire County Superior Court.  Among other relief, his petition
sought to void the board of selectmen's denial of his application
for the building permit, or the ZBA's decision rejecting their

---

[1]In fact, as quoted in the eventual opinion by the New
Hampshire Supreme Court, the ZBA's notice of decision stated
several grounds for rejecting Mr. Bosonetto's application to
build what the ZBA described as a three-bedroom house, including
that "issuance of the building permit . . . would increase the
difficulty in carrying out the Master Plan," "construction of the
3-bedroom house would cause hardship to future purchasers," and
"granting of the building permit could cause undue financial
impact on the municipality."  Bosonetto, 163 N.H. at 740.  For
present purposes, however, this court has simply accepted the
Bosonettos' claim as to the ZBA's stated reason for denying their
application.

4

appeal from that denial, on several grounds.  The petition also asked the Superior Court to reverse the ZBA's decision pursuant to N.H. Rev. Stat. Ann. § 677:4, which provides for appeals from "illegal or unreasonable" local zoning decisions.  Finally, claiming that the Town had acted in bad faith, the petition asked for an award of "double [] costs and attorneys' fees for the necessity of bringing this action."  The petition alleged in part that "McElhiney has previously published his opposition to the traditional Catholic community in Richmond, a group [of] which the petitioners are a part," and that members of the ZBA that heard Mr. Bossonetto's appeal "had admitted to being financial contributors" to "an organized political opposition that objects to the beliefs and practices of St. Benedict's Center" (numbering omitted).

The Superior Court dismissed the petition's "statutory appeal" of the ZBA's decision under § 677:4.  Bosonetto v. Town of Richmond Zoning Bd. of Adjustment, No. 09-E-159 (N.H. Super. Ct. July 3, 2010) ("Dismissal Order").  The court ruled that Mr. Bosonetto had not timely moved for rehearing before the ZBA, see N.H. Rev. Stat. § 677:2, and, as a result, could not appeal the ZBA's decision, see id. § 677:3.  Dismissal Order at 10.

The Superior Court later granted the ZBA's motion for summary judgment, and denied Mr. Bosonetto's motion for summary

5

judgment, on his remaining claims.  <u>Bosonetto v. Town of Richmond</u>
<u>Zoning Bd. of Adjustment</u>, No. 09-E-159 (N.H. Super. Ct. Jan. 21,
2011) ("<u>Summary Judgment Order</u>").  The Superior Court ruled that
Mr. Bosonetto could not seek relief from the ZBA's decision by
way of certiorari or mandamus because he had failed to properly
avail himself of the statutory avenue of relief, § 677:4.  <u>Id.</u> at
5-12.  The court also rejected Mr. Bosonetto's claim that the
Town's refusal to grant a building permit for his property due to
its lack of access to a public road, despite his claim that a
structure on the lot was a "pre-existing use," worked "an
unconstitutional taking under the Fifth Amendment of the United
States Constitution as well as . . . the New Hampshire
Constitution."  <u>Id.</u> at 13-17.  Finally, the Superior Court
rejected Mr. Bosonetto's claim for attorneys' fees and costs,
finding his allegations of "retribution against Mr. and Mrs.
Bosonetto for belonging to a church that rejects the political
agenda advocated by many of Richmond's current crop of town
officials" to be "entirely speculative and unsupported."  <u>Id.</u> at
23 (quotation marks omitted).

    Mr. Bosonetto, still acting through counsel, appealed the
Superior Court's decisions to the New Hampshire Supreme Court,
which affirmed, though it vacated the Superior Court's ruling on
the constitutional claim.  The Supreme Court agreed with the

6

Superior Court that Mr. Bosonetto could not appeal the ZBA's decision because he had not timely moved for rehearing. Bosonetto, 163 N.H. at 741-42.  The Supreme Court also rejected Mr. Bosonetto's argument that the Town was equitably estopped from relying on the untimeliness of that motion to seek dismissal of his appeal because the Town Clerk had erroneously advised Mr. Bosonetto that he could seek rehearing within 30 days of the filing of the ZBA's written decision, rather than within 30 days of when the ZBA voted to approve that decision.  Id. at 742-44.

The Supreme Court ruled further that Mr. Bosonetto could not challenge the constitutionality of disallowing a building permit for lack of a public road accessing a lot, even in the face of a pre-existing use of the lot, because his challenge was "based on a hypothetical premise not supported by the record," i.e., "that his proposed use is, in fact, a continuation of his prior lawful conforming use."  Id. at 746.  The Supreme Court noted that the ZBA had reached a contrary conclusion, "finding that the proposed house would be on a footprint larger and at a different location than that of the existing mobile home," but that Mr. Bosonetto could challenge that finding only by way of a statutory appeal from the ZBA's decision (which, as just discussed, the court ruled he could not take, because he had failed to seek timely rehearing before the ZBA).  Id. at 745.  So the Supreme Court

7

"declined to address the [constitutional] issue and vacate[d] the [Superior Court's] ruling" on the constitutional claim.  Id. Finally, the Supreme Court affirmed the Superior Court's denial of Mr. Bosonetto's request for attorneys' fees because the record supported the finding that his "bad faith claim was entirely speculative and unsupported."  Id. at 746-47.

Less than a month after the Supreme Court's ruling, the Bosonettos, now acting pro se, commenced this action.  Invoking 42 U.S.C. § 1983, their amended complaint seeks injunctive and monetary relief for several alleged violations of the United States Constitution, including:

> • "taking of property rights" by "denying all building permits to [the Bosonettos'] property," in violation of the Fifth and Fourteenth Amendments (count 1);
>
> • "retaliation for freedom of speech/association," namely, the Bossonettos' roles as "public supporters and member[s]" of the Saint Benedict Center, in violation of the First Amendment (count 2);
>
> • "violation of substantive due process rights" by denying the Bosonettos "all future building permits" and the "use of their property due to defendants' religious/political animus" (count 3);
>
> • "violation of procedural due process rights" due to (a) the involvement of McElhiney and Gillis in the decision-making process on the building permit application and appeal while "lying about" and "concealing their prejudices" against the Saint Benedict Center, and (b) the Town Clerk's supplying the Bosonettos "with false information on how to apply for a rehearing" of the ZBA's denial of the appeal (count 4); and

8

> • "violation of equal protection rights" because, while
> other Richmond "residents on non-town maintained roads
> [were] allowed to obtain building permits," including
> the previous owners of the Bosonettos' property, the
> Bosonettos were not, due solely to their "religious
> affiliations" (count 5).

The amended complaint also claims that, in violation of 42 U.S.C.
§ 1985(3), McElhiney and Gills engaged in a conspiracy to deprive
the Bosonettos of these constitutional rights (count 6).[2]

## III. __Analysis__

The defendants argue, among other things, that the
Bosonettos' claims are barred by the res judicata effect of the
judgments of the state courts.  "Under federal law, a state court
judgment receives the same preclusive effect as it would receive
under the law of the state in which it was rendered."  Dillon v.
Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011).  New
Hampshire law provides that:

> Res judicata precludes the litigation in a later case
> of matters actually decided, and matters that could
> have been litigated, in an earlier action between the
> same parties for the same cause of action.  For the
> doctrine to apply, three elements must be met:  (1) the
> parties must be the same or in privity with one
> another; (2) the same cause of action must be before
> the court in both instances; and (3) a final judgment
> on the merits must have been rendered in the first
> action.

---

[2]At oral argument, the Bosonettos clarified that they do not
allege that the Town Clerk was part of this conspiracy, and that
they attributed his erroneous advice solely to incompetence.

Brooks v. Trs. of Dartmouth Coll., 161 N.H. 685, 690 (2011).  The
defendants bear the burden of establishing that res judicata bars
the Bosonettos' claims in this action, see Dillon, 630 F.3d at
80, and, as explained below, the defendants have done so.

**A.   Same parties, or parties in privity**

First, the parties to this action are the same as, or are in
privity with, the parties to the state-court proceedings.  Both
this action and the state-court action featured Mr. Bosonetto as
a plaintiff, and the Town of Richmond, and its ZBA, as
defendants.  The Bosonettos do not question that Mrs. Bosonetto,
the sole additional plaintiff here, was in privity with Mr.
Bosonetto, her husband, for the purpose of claims arising out of
the denial of permission to erect a structure on property that
the couple jointly owns.  See Osman v. Gagnon, 152 N.H. 359, 362
(2005) (ruling that husband was in privity with wife in asserting
a claim for breach of a contract they jointly formed); see also
Yokum v. United States, 9 Cl. Ct. 602, 607-08 (1986) (finding
wife in privity with husband for purpose of a claim for
government's taking of the couple's jointly owned property).
Indeed, they conceded this point at oral argument.

The Bosonettos argue that res judicata does not bar their
claims here against McElhiney and Gillis, because they were not

10

named as defendants in the state-court action.  As this court has previously recognized, however, "certain non-parties to a judgment may invoke its res judicata effect," including "parties sued for their actions as agents of principals who successfully defended a prior suit based on their conduct, and who are thus 'persons in privity' for res judicata purposes." Sutliffe v. Epping Sch. Dist., 627 F. Supp. 2d 41, 50 (D.N.H. 2008) (quoting Fiumara v. Fireman's Fund Ins. Cos., 746 F.2d 87, 91-92 (1st Cir. 1994)), aff'd, 584 F.3d 314 (1st Cir. 2009).[3]

Thus, this court ruled in Sutliffe that members of a local school and select boards could invoke the res judicata effect of a prior judgment in favor of the boards themselves, where the prior action against the boards arose out of the actions of the boards' individual members. Id. at 50-51; see also Town of

---

[3]The Bosonettos rely on Daigle v. City of Portsmouth, 129 N.H. 561 (1987), but it is not to the contrary.  The court there rejected the plaintiff's argument that his judgment against a municipality based on the conduct of one of its police officers bound the officer in a subsequent action naming him personally, reasoning that privity did not follow from the fact of the employment relationship alone.  Id. at 570-74.  Here, in contrast, it is not the Bosonettos who are trying to bind the individual defendants to a prior judgment against the Town, but the individual defendants who are trying to bind the Bosonettos to a prior judgment in favor of the Town and against them.  This distinction makes all the difference:  indeed, in Daigle, the court specifically distinguished cases that "apply collateral estoppel defensively in an action against an employee, when his employer had successfully defended [itself] in a prior derivative liability action" based on the employee's conduct.  Id. at 573.

Seabrook v. New Hampshire, 738 F.2d 10, 11 (1st Cir. 1984)
(applying res judicata to bar claims against members of state
commission in second action based on a judgment in a prior action
brought against the commission itself).  Mr. Bosonetto's prior
action likewise arose out of the actions of McElhiney (and the
other members of the Board of Selectmen) in denying the building
permit and Gillis (and the other members of the ZBA) in affirming
that decision.  So, even though the prior action did not name
McElhiney or Gillis individually, they can invoke the res
judicata effect of the judgment in that action against the claims
brought against them in this one.  This case and the prior state-
court action involve the same parties, or parties in privity.

## B.     Same cause of action

This litigation also presents the same cause of action as
the state-court proceedings.  In applying res judicata, New
Hampshire law defines "cause of action" to include "all rights to
remedies with respect to all or any part of the transactions, or
series of connected transactions, out of which the [first] action
arose."  Grossman v. Murray, 141 N.H. 265, 269 (1996).  Here, the
"series of connected transactions" giving rise to the state court
proceedings was the Town's denial of the building permit,
followed by the ZBA's rejection of the appeal of that decision,

12

and the Town Clerk's erroneously informing Mr. Bosonetto as to his deadline to seek rehearing of the appeal.  These are the same events giving rise to the Bosonettos' claims here, which therefore asserts the same "cause of action" as the state action.

The Bosonettos point out that, in this action, they have brought claims that were not brought in the state-court action, including retaliation, due process, and conspiracy claims.  Under res judicata, however, "a subsequent suit based upon the same cause of action as a prior suit is barred 'even though the plaintiff is prepared in the second action . . . to present evidence or grounds or theories of the case not presented in the first action.'"[4]  E. Marine Constr. Corp. v. First S. Leasing,

---

[4]The plaintiffs argue in their objection that they "did not discover the defendants' conspiracy until several months after the state complaint was filed," specifically, in February 2010, when evidence showing that "McElhiney and Gillis were indeed part of a group of town officers which were conspiring" against the members of the Saint Benedict's Center "surfaced" in the Saint Benedict Center's lawsuit against the Town.  But as the defendants point out, that lawsuit concluded in October 2009, the month after Mr. Bosonetto filed his petition, and several months prior to the entry of summary judgment, in the state-court action.  The Bosonettos do not explain how evidence in a lawsuit that ended in October 2009 would not have "surfaced" until February 2010 (which, conveniently, is the month after the Superior Court ruled against the Bosonettos in their lawsuit there) and, indeed, confirmed at oral argument that they had learned of this evidence "after the initiation," but before the conclusion, of their Superior Court action.  So, while evidence discovered after a judgment enters can sometimes eliminate its res judicata effect, the Bosonettos cannot avail themselves of that exception here, because they knew of the evidence prior to

13

129 N.H. 270, 275 (1987) (quoting Restatement (Second) of Judgments § 25 (1980)).   Thus, because this lawsuit arises out of the same transaction as the state-court proceeding, it presents the same "cause of action" for res judicata purposes, even though it challenges that transaction on theories (retaliation, due process, and conspiracy) not raised previously.[5]   See, e.g., Gray v. Kelly, 161 N.H. 160, 165 (2010).

**C.   Judgment on the merits**

The state-court proceedings also ended with a "final judgment on the merits" for res judicata purposes.   In arguing to the contrary, the Bosonettos maintain that the state courts did not actually decide their claims for First Amendment religious discrimination and retaliation, Fifth Amendment takings, and Fourteenth Amendment due process violations.   But "[r]es judicata

---

the entry of the Superior Court's judgment.   See Fiumura, 746 F.2d at 92 (ruling that allegedly new evidence of defendants' wrongdoing, which plaintiff knew of but failed to raise when he moved for a new trial in state court, did not eliminate the res judicata effect of the resulting state-court judgment).

[5]Contrary to the Bosonettos' position at oral argument, a plaintiff cannot avoid the res judicata effect of a prior action through a second action challenging the same conduct but newly alleging that it was the product of a conspiracy.   See Dillon v. Select Portfolio Servicing, Inc., 2009 DNH 012, 14-15 (ruling that new "allegations about the defendants' motives, not their actual conduct" did "not amount to a different 'cause of action' for res judicata purposes"), aff'd, 630 F.3d 75 (1st Cir. 2011).

does not require a final judgment on the merits as to every specific claim to be barred; rather, so long as the previous action concluded with a final judgment on the merits, res judicata extends to bar the relitigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation.'" Sutliffe, 584 F.3d at 328 (quoting Grossman, 141 N.H. at 269) (bracketing omitted).  As already discussed, the Bosonettos' claims for violations of their First, Fifth, and Fourteenth Amendment claims, whether brought under § 1983 or § 1985, could have been raised in the state-court action, since they arise out of the same series of transactions that gave rise to that action.  See Part III.B, supra.  A final judgment on the merits in that action, then, would have judicata effect as to those claims, even assuming that those claims were not themselves decided on the merits.[6]  See id.

---

[6]This assumption is probably tenuous since, as the defendants point out, the Superior Court (a) rejected Mr. Bosonetto's claim of an unconstitutional taking under the Fifth Amendment, Summary Judgment Order at 13-17, and (b) found his claims of "retribution against Mr. and Mrs. Bosonetto for belonging to a church that rejects the political agenda advocated by many of Richmond's current crop of town officials to be entirely speculative and unsupported," id. at 23.  As just discussed, though, whether these amounted to decisions on the merits of the Bosonettos' constitutional claims (particularly in light of the Supreme Court's decision vacating the Superior Court's Fifth Amendment ruling) is irrelevant to the res judicata effect of the state court decisions, so this court need not and does not decide that question.

The Bosonettos also argue that there was, in fact, no final judgment on the merits of the state-court action because the state courts "found that [the Bosonettos] had not exhausted their administrative remedies and therefore the courts lacked subject matter jurisdiction to decide a statutory appeal."  In support of this argument, they rely on Silva v. Warden, 150 N.H. 372 (2003), but that case actually confirms the res judicata effect of the state-court decisions at issue here.

In Silva, the New Hampshire Supreme Court noted that "[p]urely procedural dismissals do not bar subsequent actions because they do not rest on a substantive decision on the merits of the case." Id. at 375.  Accordingly, the court ruled that, "where [the plaintiff's] case was dismissed for failure to exhaust administrative remedies, the dismissal was based on a purely procedural rule; thus, judicial review [was] not precluded but rather deferred until after the exhaustion of remedies." Id. But the court proceeded to consider the defendants' argument that the plaintiff could "no longer exhaust his administrative remedies" under applicable state law, which "impose[d] a specific time limit on the administrative steps that he failed to take." Id. at 376.  The Supreme Court observed that:

> If [the plaintiff] had taken the first administrative
> step within the proper time period, then exhaustion of
> administrative remedies may still have been available

> to him, and it may be that [his claims] should have
> been dismissed without prejudice.  On the other hand,
> if [the plaintiff] failed to act before the
> [applicable] deadline, his administrative remedies were
> no longer available . . . and dismissal with prejudice
> was proper.

Id. (emphasis added).  Deeming the record before it "devoid of evidence on the time of exhaustion," the Supreme Court remanded the case to the Superior Court for factual development.  Id.

The proper understanding of Silva, then, is that a dismissal for failure to exhaust administrative remedies counts as a dismissal with prejudice--and, in turn, a final decision on the merits for res judicata purposes--where the failure to exhaust takes the form of a failure to comply with administrative deadlines.  Authority from other jurisdictions specifically holds, in fact, that "[a] decision by a federal court that . . . an administrative deadline bars an action is a decision on the merits for purposes of claim preclusion." Kratville v. Runyon, 90 F.3d 195, 198 (7th Cir. 1996); see also Ebner-Cupples v. Potter, No. 05-1448, 2007 WL 541712, at *6 (E.D. Mo. Feb. 16, 2007); 18A Charles Alan Wright et al., Federal Practice and Procedure § 4441, at 214-215 (2d ed. 2002).[7]

---

[7]These authorities rely on the close analogy between dismissal for failure to comply with an administrative deadline and dismissal for failure to comply with the statute of limitations.  See, e.g., 18A Wright, supra, § 4441, at 214-15. New Hampshire law "accords res judicata effect to dispositions

The state courts dismissed Mr. Bosonetto's appeal from the ZBA's decision "based upon [the] ruling that his motion for rehearing was untimely," since, notwithstanding the deadline for rehearing set forth in N.H. Rev. Stat. § 677:2, he filed it "more than thirty days after the oral denial of [his] application." Bosonetto, 163 N.H. at 741.  This was a dismissal with prejudice (significantly, the state courts did not say otherwise) and properly so, since it was based on Mr. Bosonetto's failure to comply with an administrative deadline.  Silva, 150 N.H. at 376.

So, in contrast to a "purely procedural" dismissal without prejudice for failure to exhaust administrative remedies--under which "judicial review [is] not precluded but rather deferred until after the exhaustion of remedies"--Mr. Bosonetto can "no longer exhaust his administrative remedies" under § 677:2, because it "imposes a specific time limit on the administrative step[] that he failed to take."  Id.  Indeed, as the Supreme Court noted in Mr. Bosonetto's case, the 30-day deadline for seeking rehearing "is a strict requirement," 163 N.H. at 741, which "cannot be waived," Pelletier v. City of Manchester, 150

---

based on statutes of limitations."  Est. of Sullivan v. Pepsi-Cola Metro. Bottling Co., 2004 DNH 014, 10 (citing, inter alia, Weeks v. Harriman, 65 N.H. 91 (1889)).  It follows, as Silva suggests, that New Hampshire law also accords res judicata effect to dispositions based on administrative deadlines.

18

N.H. 687, 690 (2003).  The state courts' rejection of Mr.
Bosonetto's challenges to the ZBA's denial of his appeal, then,
amounted to a decision on the merits for res judicata purposes.

Finally, the Bosonettos argue that this result in effect
"allows the state to set up procedural hurdles" to their claims
under § 1983, when, as they correctly point out, "exhaustion of
state administrative remedies [is] not required as a prerequisite
to bringing an action pursuant to § 1983." Patsy v. Bd. of
Regents, 457 U.S. 496, 516 (1982).  But this court is not
entering judgment against the Bosonettos on their claims for
violations of their constitutional rights under § 1983 because
they failed to exhaust their state-law administrative remedies
for those violations.  This court is entering judgment against
the Bosonettos on their § 1983 claims because, even though they
arise out of the same series of transactions as the state-court
suit, they did not raise the § 1983 claims in that suit, which,
as just discussed, ended with a final judgment on the merits.

As explained in detail above, this result is dictated by
fundamental principles of res judicata, "established so that at
some point litigation over a particular controversy must come to
an end." E. Marine Constr., 129 N.H. at 273 (quotation marks
omitted).  Neither this court, nor any other, is free to
disregard these principles based on notions of "simple justice"

19

or even "a desire for right outcomes." Sutliffe, 627 F. Supp. 2d at 54-55 (citing, inter alia, Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981)).  This court must grant the defendants' motion for judgment on the pleadings based on their res judicata defense.

## IV.  **Conclusion**

For the foregoing reasons, the defendants have conclusively shown that the res judicata effect of the state-court decisions bars the Bosonettos' claims in this action.  The court therefore grants the defendants' motion for judgment on the pleadings.[8] The Clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: May 31, 2013

cc:  Nicolas Bosonetto, pro se
     Jill Bosonetto, pro se
     Daniel J. Mullen, Esq.
     John T. Alexander, Esq.

_____

[8]Document no. 24.